# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-20477
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2014

Lyle W. Cayce
Clerk

ANITA C. SCOTT,

Plaintiff–Appellant,

versus

BANK OF AMERICA, N.A.;
FEDERAL NATIONAL MORTGAGE ASSOCIATION,
Also Known as Fannie Mae,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
No. 4-12-CV-3431

Before SMITH, WIENER, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20477

Anita Scott appeals a summary judgment entered on her claims relating to the foreclosure sale of her house. Because Scott has identified no genuine dispute as to a material fact, we affirm.

I.

Scott was in default, and Bank of America, N.A., held the deed of trust. On November 9, 2011, the bank sent Scott a letter regarding the Home Affordable Modification Program ("HAMP") that included a list of frequently asked questions about HAMP and said that during the HAMP evaluation, "no foreclosure sale will be conducted and you will not lose your home." Although the letter gave Scott until November 24 to submit the documents to apply for a loan modification, she waited until February 15, 2012, before submitting any materials. In March she sent additional supporting documents, and the bank rescheduled the April 3 foreclosure sale to May 1.

On April 6, the bank sent Scott a letter that requested additional documents and included a proviso stating that the house would be subject to the foreclosure process until the bank received a completed Borrower Response Package. The letter also stated that the bank could not guarantee that it could stop a foreclosure sale if it received the completed package within thirty-seven days of the scheduled sale and that the bank was not obligated even to review the materials if it received them within fifteen days of a sale. Scott sent the requested documents and received an April 19 letter thanking her for the "complete financial documentation packet." The bank contacted Scott for more documents, which she faxed to the bank, which in turn postponed the foreclosure to June 5.

On April 27, the bank sent Scott a letter requesting additional documents by May 12. Scott did not provide them, and the foreclosure sale took place on June 5. Federal National Mortgage Association ("Fannie Mae")

No. 14-20477

bought the property.

## II.

Scott sued the bank and Fannie Mae on a litany of claims: breach of unilateral contract, breach of the duty of good faith and fair dealing, promissory estoppel, common-law fraud, fraudulent inducement, and violating the Texas Debt Collection Practices Act ("TDCPA"). The district court granted summary judgment to Bank of America and Fannie Mae on all claims.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009). The moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III.

The district court granted summary judgment on the claims for unilateral contract, promissory estoppel, common-law fraud, and fraudulent inducement under the statute of frauds. To satisfy the statute of frauds in Texas, a writing must be "signed by the party to be charged" and "must be complete within itself in every material detail and contain all of the essential elements of the agreement." *Sterrett v. Jacobs*, 118 S.W.3d 877, 879–80 (Tex. App.—Texarkana 2003, pet. denied). Although Scott does not dispute that the statute of frauds applies to the purported promise not to foreclose, she asserts that the bank's communications to her satisfy the requirements of a signed writing.

The statute of frauds bars these claims because Scott has produced no writing signed by the bank or its agent promising to delay or cancel the foreclosure. Even if we assume for the sake of argument that the bank's initial

3

communication was a signed writing promising Scott that she would not lose her house if she was being evaluated for HAMP, she did not submit any materials by the stated deadline. She has identified no other signed writing that stated she would not lose the house, and the April 6 letter (the earliest communication from the bank in the record except for the November 2011 document) expressly stated that the house might still be sold through foreclosure.

Although Scott contends that the bank's agent promised she would halt a foreclosure sale if she received requested documents at least five days before a scheduled sale, Scott has provided no writing to that effect. She points to faxes sent by her lawyer that asserted such a promise had been made, but they are not signed writings by the party to be bound. Scott's promissory-estoppel claim based on the alleged promise does not avoid the statute of frauds because Scott produced no evidence that the bank promised to reduce its oral representations to writing.[1] Because the statute of frauds bars these claims, it is not necessary to evaluate the district court's alternate reasons for dismissal or Scott's objections to them.

The district court granted summary judgment on Scott's claim for breach of the duty of good faith and fair dealing. As the district court identified, Texas does not recognize such a duty between a mortgagor and mortgagee except where there is a special relationship "marked by a shared trust or an imbalance in bargaining power." *FDIC v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990).

Scott identifies two factors that she says create such a special relationship. First, the bank possessed superior knowledge because it has processed many such modifications. Second, Scott trusted the bank through the entire process. Neither of these creates such a special relationship. The

---

[1] *See Maginn v. Norwest Mortg. Inc.*, 919 S.W.2d 164, 168 (Tex. App.—Austin 1996, no writ); *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013).

disparity of experience between Scott and the bank is no different from what is present in most mortgagor−mortgagee relationships, and being represented "by competent legal counsel" weighs heavily against finding a special relationship based on disparate bargaining power. *Clay v. FDIC*, 934 F.2d 69, 72 (5th Cir. 1991). One party's subjectively trusting another during negotiations is likewise not a special relationship of shared trust. It is not enough for Scott to show that she chose to trust the bank; she has not shown that that her agreement with it "imposed upon [her] a compulsion or necessity to trust without question."[2] The bank owed Scott no duty of good faith and fair dealing, and summary judgment on that claim was proper.

Summary judgment was likewise proper on the TDCPA claim because Scott has not identified any action by the bank that would violate that law. The TDCPA prohibits a laundry list of specific actions for collecting debts, but Scott has not identified anything that the bank did that falls under any of those provisions. Scott has made conclusional statements that the bank's actions were "unfair," "unconscionable," and "misleading," but she has not adduced evidence of any of the unfair, unconscionable, or misleading means actually prohibited by the statute. *See* TEX. FIN. CODE ANN. §§ 392.303, 392.304 (West). Because Scott has not identified any behavior prohibited by these provisions, we do not need to determine whether she has standing to bring these claims against the bank.

AFFIRMED.

---

[2] *City of San Antonio v. Forgy*, 769 S.W.2d 293, 297 (Tex. App.—San Antonio 1989, writ denied); *see also Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990) ("Texas courts classify contractual relationships special if the parties require trust and confidence to execute the contract.").